UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DR. BORIS ODYNOCKI** | **CIVIL ACTION** |
| **VERSUS** | **NUMBER: 22-209** |
| **STATE OF LOUISIANA, ET AL.** | **SECTION: "J" (5)** |

**ORDER**

Before the Court are Defendants' 12(b)(1), 12(b)(6) Motion to Dismiss and, in the Alternative, 12(e) Motion for a More Definite Statement. (Rec. doc. 7). Plaintiff opposes the motion. (Rec. doc. 20). Also before the Court are Plaintiff's Motion to Amend Complaint (Rec. doc. 12) and Plaintiff's Motion for Leave to Amend Complaint. (Rec. doc. 18). Defendants oppose both motions to amend. (Rec. docs. 16, 22). Having reviewed the pleadings, the oppositions, and the case law, the Court rules as follows.

**I.  Factual Background**

Plaintiff, Dr. Boris Odynocki, is a "white American citizen of Russian Origin" who is 81 years old, a resident of St. Tammany Parish, and a tenured professor of sociology at Southern University of New Orleans ("SUNO"). (Rec. doc. 1 at ¶ 7). On January 31, 2022, Plaintiff filed this *pro se* lawsuit in this Court due to events surrounding his suspension with pay from SUNO and his alleged eventual removal from the SUNO payroll. (*Id.* at p. 1). In his complaint, Plaintiff named as Defendants SUNO, Dr. Ray L. Belton, Dr. James Ammons, and Dr. Gregory Ford. Defendant Belton is the President-Chancellor of the Southern University System. Defendant Ammons is the Chancellor of SUNO, and Defendant Ford is the Vice-Chancellor for Academic Affairs for SUNO.

Plaintiff alleges that on November 11, 2021, he received notice from Ford that he was suspended without pay from his courses. (*Id.*). Plaintiff alleges that his teaching

assignments for the spring of 2022 were also cancelled, and that these actions were spurred by the opening of an investigation into Plaintiff following complaints from numerous staff members and students. (*Id.* at ¶¶ 10-14). In reference to these complaints, Plaintiff cites (and attaches to his complaint) a grievance filed by a student on October 21, 2021. (*Id.* Ex. 2). The grievance filed by the female student alleges that Plaintiff was openly racist in class, made sexually inappropriate comments, and was highly belittling and abusive towards African-American students. (*Id.*). Plaintiff denied these allegations. On January 4, 2022, Plaintiff alleges that he discovered that he had been removed from the payroll without notice. (*Id.* at ¶ 15). Plaintiff maintains that he attempted to "appeal" his suspension by writing letters to both Defendants Belton and Ammons, and that both letters were ignored. (*Id.* at ¶ 18). As a result, Plaintiff alleges that he was terminated without due process and without cause as required by SUNO's bylaws and by the Constitution of the United States. (*Id.* at ¶ 17).

Plaintiff alleges two claims against Defendants: a 42 U.S.C. § 1983 First Amendment employment retaliation claim for the allegedly adverse employment action taken against him following the filing of a student's grievance, and a 42 U.S.C. § 1983 procedural due process claim as a result of an alleged lack of due process afforded him with regard to his alleged removal from the SUNO payroll.

## II. Standard of Review

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977)). "On a Rule 12(b)(1)

motion, the party seeking to invoke federal jurisdiction has the burden [of proof]." *Boudreaux v. La. State Bar Ass'n*, 3 F.4th 748, 753 (5th Cir. 2021).  The district court should only grant a Rule 12(b)(1) motion "if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming*, 281 F.3d at 161.

In the Fifth Circuit, the standard of review applicable to motions to dismiss under Rule 12(b)(1) resembles the standard of review for motions to dismiss under Rule 12(b)(6), but also allows the Court to consider a broader range of materials. *Mansa Musa El v. United States*, No. 21-cv-968, 2021 WL 4148118, at *3 (E.D. La. Sept. 13, 2021) (citing *Williams v. Wynne*, 533 F.3d 360, 364-65 n.2 (5th Cir. 2008)).

Under Rule 12(b)(6), the district court "must accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff." *Schlesinger v. ES & H, Inc.*, No. 11-cv-294, 2011 WL 3900577, at *2 (E.D. La. Sept. 2, 2011) (citing *True v. Robles*, 571 F.3d 412, 417 (5th Cir. 2009)); *Napoleon v. Shows, Cali & Walsh, LLP*, No. CV 20-1775, 2021 WL 5630895, at *4 (E.D. La. Dec. 1, 2021).  A plaintiff must plead enough facts, if taken as true, to state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  A "formulaic recitation of the elements of a cause of action" will not meet this pleading standard. *Id.* at 555.  Plausibility does not require a showing of probability as a well-pleaded complaint can proceed even if "actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* at 556.  However, legal conclusions are not entitled to a presumption of truth for the purposes of a Rule 12(b)(6) motion. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Napoleon*, 2021 WL 5630895, at *4.

3

Federal Rule of Civil Procedure Rule 12(e) provides for a more definite statement when the pleading at issue "is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). "If a pleading fails to specify the plaintiff's allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding." *Jones v. CNT Chartis Ins. Agency, Inc.*, No. CIV 11-402, 2011 WL 13291151, at *2 (D.N.M. Aug. 9, 2011) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

The standard for evaluating a motion for more definite statement is whether the complaint "is so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it." *Advanced Commc'ns Tech., Inc. v. Li*, No. 05 Civ. 4628, 2005 WL 3215222, at *3 (S.D.N.Y. Nov. 30, 2005) (citing *Bower v. Weisman*, 639 F. Supp. 532, 538 (S.D.N.Y. 1986)).

When evaluating a motion for more definite statement, the Court must assess the complaint in light of the minimal pleading requirements of Rule 8 of the Federal Rules of Civil Procedure, which provides in pertinent part, "A pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing the pleader is entitled to relief. . . ." Federal Rule of Civil Procedure 9(f), which should be read in conjunction with Rule 8, states that averments of time and place are material for the purpose of testing the sufficiency of a pleading; specific pleading of these averments, however, is not required.  *Ibrahim v. Bernhardt*, No. CV 19-00101, 2019 WL 3006418, at *1–2 (E.D. La. July 10, 2019).

The 12(e) motion is disfavored, in that "in view of the great liberality of F.R.Civ. P. 8, permitting notice pleading, it is clearly the policy of the Rules that Rule 12(e) should not be

4

used to frustrate this policy by lightly requiring a plaintiff to amend his complaint which under Rule 8 is sufficient to withstand a motion to dismiss." *Mitchell v. E–Z Way Towers, Inc.*, 269 F.2d 126, 132 (5th Cir. 1959); *see generally* 5A C. Wright and A. Miller, Federal Practice and Procedure § 1377 (2d ed. 1990).

### III.     The Motion to Dismiss

####     A.     Rule 12(b)(1)

Federal courts are courts of limited jurisdiction. Without jurisdiction conferred by statute or the Constitution, district courts lack the power to adjudicate claims. *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286-87 (5th Cir. 2012); *Stockman v. FEC*, 138 F.3d 144, 151 (5th Cir. 1998). Under Federal Rule of Civil Procedure Rule 12(b)(1), a claim is "properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate" the claim. *In re FEMA Trailer*, 668 F.3d at 286-87. As noted above, a court should consider a Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Id.* Considering a Rule 12(b)(1) motion to dismiss first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id.*

Under the Eleventh Amendment of the United States Constitution, a non-consenting state is immune from any lawsuit seeking monetary damages or equitable relief brought in federal courts by her own citizens or by the citizens of another state. *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). Although Congress has the power to abrogate this immunity through the Fourteenth Amendment, it has not done so as to claims for the deprivation of civil rights under Section 1983. *Quern v. Jordan*, 440 U.S. 332, 345 (1979). The Eleventh Amendment grants a state, or "arm of the state," sovereign immunity from a suit against it

5

in federal court. *Vogt. Bd. Of Comm'rs of Orleans Levee Dist.*, 294 F.3d 684, 688-89 (5th Cir. 2002) (citing *Regents of the Univ. Of Cal v. Doe*, 519 U.S. 425, 429 (1997)). When the state is the "real, substantial party in interest," the Eleventh Amendment also serves as a bar to state law-based suits against state officials. *Spikes v. McVea*, Civ. A. No. 17-8164, 2018 WL 3329060, at *5 (E.D. La. Jul. 6, 2018); *see also Hughes v. Savell*, 902 F.2d 376, 378 (5th Cir. 1990).

To the extent that Plaintiff seeks monetary damages against Defendants in their official capacities, such claims are barred by the Eleventh Amendment and will be dismissed. Sovereign immunity is the rule, but the rule is subject to exceptions. States, for example, may consent to suit. *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990). Generally, the State of Louisiana has not waived its sovereign immunity for suits brought in federal court. *Richardson v. S. Univ.*, 118 F.3d 450, 453 (5th Cir. 1997); *Delahoussaye v. City of New Iberia*, 937 F.2d 144, 147 (5th Cir. 1991). The Louisiana Legislature has also clearly expressed that "[n]o suit against the state or a state agency or political subdivision shall be instituted in any court other than a Louisiana state court." La. Rev. Stat. § 13:5106(A). The Fifth Circuit has explicitly held that "Southern University and its Board of Supervisors are arms of the State of Louisiana, that the State is the real party in interest in this lawsuit, and that Southern and its Board are entitled to Eleventh Amendment immunity." *Richardson*, 118 F.3d at 452 (citing *Delahoussaye*, 937 F.2d at 146). As such, SUNO is an "alter ego" of the State for purposes of the State's Eleventh Amendment immunity, and Louisiana's sovereign immunity extends to SUNO personnel – Defendants Belton, Ammons, and Ford – when they are sued in their official capacity. *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 1999).

Moreover, neither a State nor its officials acting in their official capacities are "persons" capable of being sued under Section 1983. *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989). The United States Supreme Court has specifically addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in an official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment. *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

As the Fifth Circuit stated in *Fairley v. Stadler*, "'[N]either a State nor its officials acting in their official capacities are 'persons' under §1983.' As §1983 only provides a remedy against a 'person,' the dismissal of Fairley's §1983 claims was indisputably proper." 294 F. App'x 805, 808-09 (5th Cir. 2008). Thus "long and clearly established Supreme Court precedent on this matter," *id.*, means that all "official capacity" claims for monetary relief under Section 1983 lack an arguable legal basis and are thus subject to dismissal.

In his complaint and in his opposition, Plaintiff fails to distinguish whether he is suing the State Defendants in their individual or official capacities or both.[1] Nevertheless, for the reasons explained above and in accordance with longstanding precedent, federal courts lack jurisdiction over suits against state officials sued in an official capacity for monetary relief. Accordingly, this Court lacks jurisdiction over all claims for monetary relief against Defendant SUNO and Defendants Belton, Ammons, and Ford in their official capacity, and such claims will be dismissed without prejudice.[2]

---

[1] Plaintiff's opposition does no more than argue with existing Supreme Court and circuit precedent, maintaining that it is "absurd" and irrational, and Defendants misconstrue the Eleventh Amendment to the Constitution. (Rec. doc. 20, 20-1). The law of the land is set down by the Supreme Court and the federal circuits, and this Court is bound to follow it.

[2] When a district court dismisses a claim for lack of subject-matter jurisdiction under Rule 12(b)(1), it must do so without prejudice. *See Cox, Cox, Filo, Camel & Wilson, L.L.C. v. Sasol North America, Inc.*, 544 F. App'x 455,

7

### B. Rule 12(b)(6)[3]

Defendants argue that Plaintiff has not sufficiently pleaded claims against Defendant Belton and Ammons in their individual capacities, *i.e.*, Plaintiff has failed to state a claim upon which relief can be granted as to those two defendants. Plaintiffs who sue government officials in their individual capacities must allege specific conduct that gives rise to a constitutional violation. *Schultea v. Wood*, 47 F.3d 1427, 1434 (5th Cir. 1995). Individual capacity claims "must be pleaded with 'factual detail and particularity,' not mere conclusory allegations." *Jackson v. Widmall*, 99 F.3d 710 (5th Cir. 1996) (quoting *Schultea*, 47 F.3d at 1430). "Allegations must be enough to raise a right to relief above the speculative level." *Id.* Overall, "[p]ersonal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983).

As noted above, Defendant Belton is the President-Chancellor of the Southern University System and Defendant Ammons is the Chancellor of SUNO. Defendants Belton and Ammons are thus supervisory officials of the Southern University System and SUNO, respectively. A supervisory official cannot be held liable pursuant to Section 1983 under any theory of *respondeat superior* merely because an employee or subordinate allegedly violated Plaintiff's constitutional rights. *Alton v. Tex. A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999); *Baskin v. Parker*, 602 F.2d 1205, 1220 (5th Cir. 1979). To hold Belton and Ammons personally liable, Plaintiff must establish either that they were "personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists

---

456-57 (5th Cir. 2013) (finding dismissal with prejudice under Rule 12(b)(1) improper because this is "to disclaim jurisdiction and then exercise it").

[3] The Court considers the 12(b)(6) motion and Defendants' qualified immunity argument only as to any claims against the individual Defendants in their individual capacities, over which this Court does possess jurisdiction.

between an act of [these defendants] . . . and the alleged constitutional violations." *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981). Plaintiff does not allege that Defendants Belton and Ammons were present for, or personally involved in, his alleged suspension and termination. Plaintiff names them only as defendants in his complaint and mentions them once to say that he wrote them an "appeal" letter to which they did not respond. (Rec. doc. 1 at ¶ 18). No section of the Bylaws and Regulations of the Board cited by Plaintiff entitle him to an appeal; it entitles him only to a hearing. (Rec. doc. 1 at ¶ 7). Plaintiff's vague and conclusory allegation completely lacks any factual detail or particularity and is thus insufficient to establish individual liability under Section 1983.

## C.     Qualified Immunity[4]

Defendants also argue that they are entitled to qualified immunity against Plaintiff's Fourteenth Amendment due process claim and his First Amendment claim under Section 1983. "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (noting that "[t]he protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'"). Plaintiff bears the burden of proving that Defendants are not entitled to qualified immunity. *Disraeli v. Rotunda*, 489 F.3d 628, 631 (5th Cir. 2007) (citing *Beck v. Tex. State Bd. of Dental Exam'rs*, 204 F.3d 629, 633-34 (5th Cir. 2000)). "The plaintiff's factual assertions are taken

---

[4] The Court notes that it need only address the issue of qualified immunity as to Defendant Ford as he did not move to dismiss any claims against him in his individual capacity under Rule 12(b)(6). The resolution of this issue, however, necessarily pertains to all three individual defendants.

as true to determine whether they are legally sufficient to defeat the defendant's motion for [qualified immunity]." *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009) (citing *Freeman v. Gore*, 483 F.3d 404, 410 (5th Cir. 2007)). "A public official is entitled to qualified immunity unless the plaintiff demonstrates that (1) the defendant violated the plaintiff's constitutional rights and (2) the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation." *Hinojosa v. Livingston*, 807 F.3d 657, 669 (5th Cir. 2015) (quoting *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011)). Each Defendant's actions must be considered individually. *Meadours v. Ermel*, 483 F.3d 417, 421 (5th Cir. 2007) (citing *Stewart v. Murphy*, 174 F.3d 530, 537 (5th Cir. 1999) (additional citations omitted)). Plaintiff is required to prove "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

Qualified immunity operates to ensure that before they are subjected to suit, state actors are on notice that their conduct is unlawful, and fair notice requires clearly established law. That is, the law must "clearly prohibit the state actor's conduct in the particular circumstances before him so every reasonable official knows not to engage in that conduct." *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018). "Abstract or general statements of legal principle untethered to analogous or near-analogous facts are not sufficient to establish a right 'clearly' in a given context; rather, the inquiry must focus on whether a right is clearly established as to the specific facts of the case." *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015). To show the law is clearly established, a party must "identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment." *Wesby* 138 S. Ct. at 590.

Plaintiff alleges that Defendants Belton, Ammons, and Ford are personally liable to him for money damages under Section 1983 for denying his right to free speech without due process and for terminating him without proper notice and due process. Plaintiff alleges that he was abruptly suspended with pay from teaching all of his courses, without warning, by notice of suspension from Defendant Ford and that when he contacted Defendant Ford for an explanation of his status at SUNO, Defendant Ford ignored him. (Rec. doc. 1 at ¶¶ 14-16). Plaintiff alleges that he attempted to "appeal" his suspension by writing letters to both Defendants Belton and Ammons, and that both letters were ignored. (*Id.* at ¶ 18).

While this Court recognizes that academic freedom "is a special concern of the First Amendment" and "class discussion is protected activity," even this right of free speech has limits. *Buchanan v. Alexander*, 919 F.3d 847, 853 (5th Cir. 2019) (citing *Keyishian v. Bd. of Regents*, 385 U.S. 589, 603 (1967); *Kingsville Indep. Sch. Dist. v. Cooper*, 611 F.2d 1109, 1113 (5th Cir. 1980). Students and teachers are not simply allowed to speak everything on their mind simply because such speech occurs in the classroom. *See, e.g., Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675 (1986) (holding that student could not claim First Amendment protection for offensively lewd and indecent speech); *Martin v. Parrish*, 805 F.2d 583 (5th Cir. 1986) (holding that professor had no First Amendment right to use profane language in the classroom).

Plaintiff maintains that Defendants retaliated against him after a disgruntled student filed a complaint in which she alleged that Plaintiff made sexually-inappropriate statements regarding a past student who had visible pubic hair, was openly racist against African-American students, and engaged in a campaign of targeted humiliation and

11

harassment of African-American students. (Rec. doc. 1 Ex. 2). Specifically, Plaintiff alleges that Defendants took an adverse action against him by suspending him from teaching after the filing of the complaint and by removing him from the SUNO payroll in violation of Plaintiff's First Amendment and due process rights. (*Id.* at p. 3). It is axiomatic that public university professors are public employees. To state a Section 1983 claim for a violation of the First Amendment right to free speech, employees of a public university must allege that "(1) they were disciplined or fired for speech that is a matter of public concern, and (2) their interest in the speech outweighed the university's interest in regulating the speech." *Trudeau v. Univ. of N. Texas, By & Through its Bd. of Regents*, 861 F. App'x 604, 609 (5th Cir. 2021).

The Court finds that Plaintiff's claim fails on the face of the complaint because he cannot establish that his speech was on a matter of public concern. The law is clear that if Plaintiff's speech does not involve a matter of public concern, it is unnecessary for this Court to scrutinize the reason for the discipline imposed on him by Defendants (*i.e.*, his due process claim). *Connick v. Myers*, 461 U.S. 138, 146 (1983); *Buchanan v. Alexander*, 919 F.3d 847, 853 (5th Cir. 2019) (citing *Bonnell v. Lorenzo*, 241 F.3d 800, 810 (6th Cir. 2001)); *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 285 (1977); *Dambrot v. Cent. Mich. Univ.*, 55 F.3d 1177, 1186 (6th Cir. 1995).

According to Plaintiff's own complaint and the exhibits attached to it, the speech in question regarded Plaintiff's commentary on a female student's appearance in class, as well as consistently racist comments. (Rec. doc. 1 Ex. 2). The Court finds that the use of profanity or the discussion of sexual topics, such as the sex lives of students, is not a matter of public concern. *Buchanan*, 919 F.3d at 853. In the context of a college classroom, speech

that does not serve an academic purpose is not of public concern. *Id.* (citing *Martin v. Parrish*, 805 F.2d 583, 585 (5th Cir. 1986)). As a threshold issue, it is thus clear that, even taken in a light most favorable Plaintiff, he has failed to sufficiently allege that there was a violation of his First Amendment and due process rights. As such, Defendants Belton, Ammons, and Ford are entitled to qualified immunity.[5]

### III. The Motions to Amend

Because no scheduling conference has been held, and therefore no deadline to amend pleadings established, Rule 15(a) governs Plaintiff's motions to amend. Federal Rule of Civil Procedure 15(a) provides that leave to amend pleadings "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). Rule 15(a) and other federal rules "reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48 (1957).

Rule 15(a) evinces a liberal amendment policy and a motion to amend should not be denied absent a substantial reason to do so. *See Jacobsen v. Osborne*, 133 F.3d 315, 318 (5th Cir. 1998). "This policy is certainly strongest when the motion challenged is the first motion to amend." *Thompson v. New York Life Ins. Co.*, 644 F.2d 439, 444 (5th Cir. 1981); *Canales v. WGP Assocs., L.L.C.*, Civ. A. No. 14-2679, 2015 WL 10557396, at *3 (E.D. La. Nov. 23, 2015).

Leave to amend is not automatic. *Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 666 (5th Cir. 1981). The decision to grant or deny a motion for leave to amend lies within the sound discretion of the trial court. *Id.* As outlined by the Fifth Circuit, courts

---

[5] As this Court grants Defendant's motion to dismiss in full, there is no need to consider Defendants' Rule 12(e) arguments.

13

in this circuit examine five factors to determine whether to grant a party leave to amend a complaint: (1) undue delay; (2) bad faith or dilatory motive on the part of the movant; (3) repeated failure to cure deficiencies by amendments previously allowed; (4) undue prejudice to the opposing party by virtue of allowance of the amendment; and (5) futility of the amendment. *Rosenzweig v. Azurix*, 332 F.3d 854, 864 (5th Cir. 2003); *Paradies Shops, L.L.C. v. Bros. Petroleum, L.L.C.*, No. CV 20-1278, 2020 WL 12833948, at *2 (E.D. La. Dec. 7, 2020).

In his first motion to amend his complaint (Rec. doc. 12), Plaintiff seeks to add various state law claims based on the repercussions that he suffered as a result of his suspension and termination. Because this Court has granted Defendants' motion to dismiss as to Plaintiff's federal law claims, there is no basis for federal jurisdiction over Plaintiff's state law claims. A federal question exists only when "a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Singh v. Duane Morris LLP*, 538 F.3d 334, 337-38 (5th Cir. 2008) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 27-28 (1983)). However, "[t]he fact that a substantial federal question is necessary to the resolution of a state-law claim is not sufficient to permit federal jurisdiction." *Id.* at 338. Only in a "'special and small category' of cases" will federal jurisdiction exist when state law creates the cause of action. *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006)). That limited category of federal jurisdiction only exists where "(1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is

14

actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities. *Singh*, 538 F.3d at 338.

The only claims that Plaintiff seeks to add are state-law claims for mental anguish and emotional distress caused by his suspension and termination. These two claims do not create federal subject matter jurisdiction. And because this Court has now dismissed all of Plaintiff's federal law claims against Defendants, the amendment is futile. *N. Atl. Sec. Co. v. Blache*, Civ. A. No. 19-379, 2019 WL 4803231, at *3 (M.D. La. Sept. 30, 2019) (citing *Wiggins v. La. State Univ.-Health Care Servs. Div.*, 710 F. App'x 625, 628 (5th Cir. Oct. 6, 2017) (affirming district court's finding that any amendment would be futile when proper defendant was immune from suit under Eleventh Amendment)).

As to his second motion to amend, Plaintiff seeks to add Dr. Evelyn B. Harrell to the complaint. Harrell is the Dean of College of Arts and Sciences at SUNO. (Rec. doc. 1 Ex. 3). This proposed amendment is also futile. From the facts as outlined in Plaintiff's complaint and the exhibit attached thereto, Harrell did no more than email Plaintiff to ask for his response to the complaint filed against him. (*Id.*). In any event, Harrell is in the same posture as the other Defendants. She is a state actor for purposes of Eleventh Amendment Immunity under Section 1983. For the reasons stated in Section III(A), *supra*, this amendment too is futile.

## IV. Conclusion

For the reasons stated above,

**IT IS ORDERED** that Defendants' 12(b)(1), 12(b)(6) Motions to Dismiss and, in the Alternative, 12(e) Motion for a More Definite Statement (Rec. doc. 7) is **GRANTED** as outlined below.

**IT IS FURTHER ORDERED** that the official-capacity claims against all four Defendants are **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction under Rule 12(b)(1).

**IT IS FURTHER ORDERED** that the individual-capacity claims against Defendants Belton and Ammons are **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted under Rule 12(b)(6).

**IT IS FURTHER ORDERED** that Defendants are entitled to qualified immunity for those federal law claims asserted by Plaintiff against Defendants in their individual capacities.

**IT IS FURTHER ORDERED** that any remaining state-law claims are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Amend Complaint (Rec. doc. 12) and Plaintiff's Motion for Leave to Amend Complaint (Rec. doc. 18) are **DENIED**.

New Orleans, Louisiana, this 14th day of June, 2022.

MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE